FILED

2015 JAN 28 PM 3:45

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SEALED

UNITED STATES OF AMERICA

v.

MARK GARDNER
TAMMIE LYNN CLINE

CASE No. 6:15-cr-11-Orl-28GJK
18 U.S.C. § 1343
18 U.S.C. § 1349
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C) - Forfeiture
18 U.S.C. § 982 - Forfeiture
28 U.S.C. § 2461(c) - Forfeiture

## INDICTMENT

The Grand Jury charges:

## COUNT ONE

### A. Introduction

At times material to this Indictment:

1. Gardner Cline, L.L.C. (Gardner Cline) was a limited liability corporation registered with the Florida Department of State. Its principal place of business was located in Seminole County, Florida, in the Middle District of Florida. Defendants TAMMIE LYNN CLINE and MARK GARDNER were Managing Members of Gardner Cline.

2. Vacation Communications Group, LLC (Vacation Communications Group) was a Nevada limited liability company.

3. Gardner Cline and Vacation Communications Group claimed to be involved in the business of re-selling timeshare properties.

### B. <u>Conspiracy</u>

4.     Beginning at a time unknown to the Grand Jury, but beginning at least in or about April 2010, and continuing thereafter through and including in or about May 2013, in Seminole County, Florida, in the Middle District of Florida, and elsewhere,

**MARK GARDNER**
**TAMMIE LYNN CLINE**

the defendants herein, did knowingly and willfully combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury:

    a.     To commit mail fraud, by knowingly, willfully, and with intent to defraud, devising, and intending to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, and, for the purpose of executing such scheme and artifice, knowingly placing in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service; knowingly depositing and causing to be deposited to be sent and delivered by a private and commercial interstate carrier; knowingly taking and receiving from the United States Postal Service and a private and commercial interstate carrier; and knowingly causing to be delivered by mail and private and commercial interstate carrier, according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, any matter and thing, in violation of Title 18, United States Code, Section 1341; and

b.   To commit wire fraud, by knowingly, willfully, and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of false and fraudulent pretenses, representations and promises that related to material facts, and, for the purpose of executing the aforesaid scheme and artifice to defraud, knowingly transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any matter and thing, in violation of Title 18, United States Code, Section 1343.

### C. Manner and Means

5.   It was part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did unlawfully devise and execute a scheme and artifice to defraud timeshare owners of money and property by means of materially false and fraudulent pretenses, representations and promises.

6.   It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did devise and execute a scheme and artifice to deceptively advertise, market, promote, offer for sale, and sell timeshare resale services through telephone calls in interstate and foreign commerce made to timeshare owners located throughout the United States.

7.   It was a further part of the conspiracy that Universal Timeshare Sales Associates (UTSA) was the name of one of the businesses that was used in the execution of this scheme.

8.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did operate a call center located in Seminole County, in the Middle District of Florida, for the purpose of engaging in unsolicited telemarketing calls, using the business name of UTSA, with timeshare owners located throughout the United States.

9.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did obtain money by using interstate and foreign wires to solicit timeshare owners to pay fees to arrange for the sale of their timeshare properties by means of false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

    a.  False claims that UTSA had buyers who were prepared to purchase the timeshares, when, in truth and in fact, as defendants MARK GARDNER, TAMMIE LYNN CLINE, and their co-conspirators then and there well knew, such claims were false;

    b.  False claims that a buyer was willing to pay a specific dollar amount for the timeshare owned by the timeshare owner, when, in truth and in fact, as defendants MARK GARDNER, TAMMIE LYNN CLINE, and their co-conspirators then and there well knew, such claims were false;

    c.  False claims that, in some instances, the purported buyer had already deposited funds into an escrow account, when, in truth and in fact, as defendants MARK GARDNER, TAMMIE LYNN CLINE, and their co-conspirators then and there well knew, such claims were false; and

      d.    False claims that, in some instances, a buyer was present in the showroom at that moment, ready to purchase the timeshare owned by the timeshare owner, when, in truth and in fact, as defendants MARK GARDNER, TAMMIE LYNN CLINE, and their co-conspirators then and there well knew, such claims were false.

10.    It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did charge a fee for the sale to proceed, which typically ranged from between $1,600 and $2,200.

11.    It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did falsely represent that the fee for the alleged sale would pay for various sale-related expenses, such as recording costs and legal fees.

12.    It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did falsely represent that the sale of the timeshare property would close very soon, sometimes claiming that the sale would close within 90 days.

13.    It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did request that the timeshare owners provide their credit card or debit card information for payment of the fee.

14. It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did cause a contract to be sent to the timeshare owners that included identifying information about the timeshare owner and their timeshare property.

15. It was a further part of the conspiracy that the contract sent to the timeshare owners did not relate to a pending sale of their timeshare property as had been promised, but was a contract that only provided that UTSA would advertise the timeshare for sale or rent.

16. It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury, in response to complaints from timeshare owners who had reviewed the contract and realized that it was only a marketing contract, would and did cause letters to be sent by United States Mail and interstate wire to timeshare owners that falsely represented that there were buyers for the timeshare properties.

17. It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did employ a series of tactics to stall timeshare owners from seeking a refund of the fees that they had paid, including by placing consumers on hold indefinitely and by falsely claiming that the purported buyer was having various scheduling or financing difficulties.

18. It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did fail to sell the timeshare properties as had been promised.

19.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did deny or ignore requests for refunds from the timeshare owners and would dispute chargebacks with the credit card companies.

20.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did receive millions of dollars from timeshare owners as a result of devising and executing this scheme and artifice to defraud.

21.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury, in an effort to deceive the timeshare owners as to the location of the call center and UTSA, would and did falsely represent that the call center and UTSA were located in Beaverton, Oregon.

22.  It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did use interstate and foreign wires to further this scheme, including by using interstate and foreign wires to make telephone calls to timeshare owners located throughout the United States, by using interstate and foreign wire to receive telephone calls from those timeshare owners, by using interstate and foreign wires to process credit card and debit card payments, by using interstate and foreign wires to send emails to timeshare owners, and by using interstate and foreign wires to receive emails from timeshare owners.

23. It was a further part of the conspiracy that defendants MARK GARDNER, TAMMIE LYNN CLINE, and other co-conspirators known and unknown to the Grand Jury would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme and artifice to defraud and the acts committed in furtherance thereof.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS TWO THROUGH SIX

24. The allegations contained in paragraphs 1 through 3 of Count One of this Indictment are hereby realleged and incorporated herein by reference.

25. Beginning at a time unknown to the Grand Jury, but beginning at least in or about April 2010, and continuing thereafter through and including in or about May 2013, in Seminole County, Florida, in the Middle District of Florida, and elsewhere,

### MARK GARDNER
### TAMMIE LYNN CLINE

the defendants herein, did knowingly, willfully, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, which scheme and artifice is described as follows:

### A. Manner and Means

26. The substance of the scheme and artifice and its manner and means are set forth in paragraphs 5 through 23 of Count One of the Indictment, the allegations of which are repeated and realleged as if fully set forth herein.

### B. Wires

27. On or about the dates set forth in the table below, in the Middle District of Florida, and elsewhere,

**MARK GARDNER**
**TAMMIE LYNN CLINE**

the defendants herein, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description of Wires |
|---|---|---|
| Two | March 30, 2012 | Telephone call with a victim with the initials of B.W. |
| Three | April 20, 2012 | Telephone call with a victim with the initials of R.G. |
| Four | July 11, 2012 | Telephone call with a victim with the initials of M.M. |
| Five | November 20, 2012 | Telephone call with a victim with the initials of P.S. |
| Six | January 9, 2013 | Telephone call with a victim with the initials of D.S. |

All in violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 2.

### COUNTS SEVEN THROUGH TEN

28. The allegations contained in paragraphs 1 through 3 of Count One of this Indictment are hereby realleged and incorporated herein by reference.

29. On or about the dates set forth in the table below, in the Middle District of Florida, and elsewhere,

**MARK GARDNER**
**TAMMIE LYNN CLINE**

the defendants herein, did knowingly engage and attempt to engage in a monetary transaction in and affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in that the defendants knowingly engaged and attempted to engage in the following monetary transactions:

| Count | Date | Transaction |
|---|---|---|
| Seven | April 14, 2011 | Wire transfer in and affecting interstate and foreign commerce of $14,733.40, into an account of Gardner Cline at SunTrust Bank, a federally insured financial institution the accounts and deposits of which were then insured by the Federal Deposit Insurance Corporation |
| Eight | April 4, 2012 | Wire transfer in and affecting interstate and foreign commerce of $27,270.40, into an account of Gardner Cline at SunTrust Bank, a federally insured financial institution the accounts and deposits of which were then insured by the Federal Deposit Insurance Corporation |
| Nine | December 6, 2012 | Wire transfer in and affecting interstate and foreign commerce of $14,262.00, into an account of Gardner Cline at SunTrust Bank, a federally insured financial institution the accounts and deposits of which were then insured by the Federal Deposit Insurance Corporation |
| Ten | December 20, 2012 | Wire transfer in and affecting interstate and foreign commerce of $11,617.00, into an account of Gardner Cline at SunTrust Bank, a federally insured financial institution the accounts and deposits of which were then insured by the Federal Deposit Insurance Corporation |

All in violation of Title 18, United States Code, Section 1957 and Title 18, United States Code, Section 2.

## FORFEITURE

1.      The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      From their engagement in the violations alleged in Counts One through Six of this Indictment, punishable by imprisonment for more than one year, the defendants,

**MARK GARDNER**
**TAMMIE LYNN CLINE**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of their interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations.

3.      The allegations contained in Counts Seven through Ten of this Indictment are hereby realleged and fully incorporated by reference for the purpose of alleging forfeitures of the United States of America, pursuant to the provisions of Title 18, United States Code, Section 982.

4.      The defendants, **MARK GARDNER and TAMMIE LYNN CLINE**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982, any and all right, title, and interest they may have in any property, real or personal, involved in such offense(s), or any property traceable to such property, as a result of such violation of Title 18, United States Code, Section 1957.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code 982(b)(1) and Title 28, United States Code, Section 2461(c).

                      A TRUE BILL,

                      _____
                      Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
    Roger B. Handberg
    Assistant United States Attorney

By: _____
    Carlos A. Perez-Irizarry
    Assistant United States Attorney

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

MARK GARDNER
TAMMIE LYNN CLINE

## INDICTMENT

Violations:

18 U.S.C. § 1343
18 U.S.C. § 1349
18 U.S.C. § 1957

A true bill,

_____
Foreperson

Filed in open court this 28 day
of January, 2015.

_____
Clerk

Bail   $_____